IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENNETH ALBERT,

    Plaintiff,

vs.

BANK OF AMERICA, N.A., *et al.*,

    Defendants.

No. 12 C 9785

Magistrate Judge Schenkier

## MEMORANDUM OPINION AND ORDER[1]

This case arises out of an incident in which Plaintiff Kenneth Albert ("Plaintiff" or "Mr. Albert") was injured when a mirror lying on top of a dumpster at his condominium complex fell on his foot as he attempted to dispose of some discarded glass shelves. Mr. Albert originally filed a five count complaint in state court alleging negligence against Bank of America, NA ("Bank of America"), RE/MAX City View ("RE/MAX"), Prestige Management Solutions, LLC ("Prestige"), The Brookwood Condominium Association ("BCA"), and The Federal Home Loan Mortgage Corporation ("Freddie Mac") (doc. # 1: Notice of Removal, Ex. 1). On December 7, 2012, Freddie Mac removed the complaint to federal court (*Id.*). Mr. Albert subsequently amended the complaint to add defendants A&D Property and Services, Inc. ("A&D") and its owner, Ananias Granger ("Granger"), and Patmar Janitorial Service, Inc. ("Patmar") (doc. # 26: Second Am. Compl.). Pursuant to various motions and settlement agreements, Bank of America,

---

[1]On April 4, 2013, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 17).

RE/MAX, Granger and Freddie Mac are no longer defendants;[2] BCA, Prestige, A&D and Patmar remain in the case (doc. # 203: Third Amended Amended ("TAC")).

Before the Court is BCA's motion for summary judgment (doc. # 238: Def. Mot. for SJ) as to Count II of Mr. Albert's Third Amended Complaint, which is the only count directed at BCA.[3] Plaintiff has filed a response to the motion (doc. # 258: Pl. Resp. to Def. Mot. for SJ), and BCA has filed a reply (doc. # 270: Def. Reply to Def. Mot. for SJ). Mr. Albert's central allegation against BCA is that it was negligent in the way it maintained a dumpster area at the Brookwood condominium complex, and that this negligence resulted in the creation of a dangerous condition (a mirror that was left on top of a dumpster) that caused Plaintiff a severe injury. In its motion for summary judgment, BCA maintains that the material, undisputed facts show that it lacked notice of any dangerous condition and, as a result, it is entitled to judgment as a matter of law. For the reasons set forth below, BCA's motion is granted.

## I.

We turn now to the legal standards governing summary judgment motions, as well as to certain important procedural defects in Mr. Albert's response to BCA's motion.

### A.

The legal standards governing motions for summary judgment are well-established. Summary judgment is appropriate where the moving party establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue exists when "the

---

[2]Bank of America was dismissed on December 3, 2013 (doc. # 60); plaintiff dismissed Ananias Granger on July 9, 2014 (doc. # 169); Freddie Mac was dismissed from the case on September 14, 2014 (doc. # 175); and RE/MAX was dismissed on July 15, 2015 (doc. # 249).

[3]The counts directed at the other remaining defendants—Prestige (Count I); Patmar (Count III); and A & D (Count IV)—are the subject of separate summary judgment motions by each of those defendants, which we decide today in separate rulings.

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the movant shows that there is an absence of evidence to support the nonmoving party's case, the nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013) (internal citations and quotations omitted).

In deciding a motion for summary judgment, we "construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen'l Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013). We do not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Stokes v. Board of Educ. of the City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). That said, we are mindful that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Local Rule 56.1(a) requires a party moving for summary judgment to file a statement of material facts as to which the moving party contends there is no genuine issue. Local Rule 56.1(b) then requires that each party opposing a motion for summary judgment then serve and file: (1) any opposing affidavits and other materials referred to in Fed. R. Civ. P. 56(e); (2) a supporting memorandum of law; and (3) a concise response to the movant's statement of material facts that must contain:

> (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph [of the movant's statement of material facts] to which it is directed, and

(B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and

(C) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. . . . All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

As the last sentence of Local Rule 56.1(b)(3)(C) makes plain, all properly supported material facts set forth in a movant's statement of material facts are deemed admitted unless properly controverted by the opposing party as set forth above. *See Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015). Mere denials of a properly supported factual statement are not sufficient to show that a genuine issue of material fact exists. *See Friend v. Valley View Cmty. Unit. Sch. Dist. 365U*, 789 F.3d 707, 710-11 (7th Cir. 2015). In other words, to withstand a motion for summary judgment, the nonmoving party must "come forward with appropriate evidence demonstrating that there is a pending dispute of material fact," and thereby present evidence sufficient to establish a triable issue of fact on all essential elements of its case. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994); *see also Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003). While the evidence offered need not be in a form that would be admissible at trial, *see Liu v. T & H Mach., Inc.*, 191 F.3d 790, 796 (7th Cir. 1999), the evidence must identify a specific, genuine issue for trial. *See Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 397 (7th Cir. 2012).

**B.**

In this case, on June 5, 2015, BCA moved for summary judgment and, pursuant to Local Rule 56.1(a), filed a statement of material facts ("SOMF") in support of its motion (doc. # 241: Def. SOMF). Local Rule 56.1(b) obligated Mr. Albert to file a response to BCA's SOMF, but Mr. Albert never did so. The docket reflects that Mr. Albert filed two separate responses to Prestige's Local Rule 56.1 statement of undisputed material facts (docs. ## 259, 263), each of which also included a statement of additional facts. But, neither of those documents is responsive to BCA's SOMF.

BCA pointed out Mr. Albert's omission on August 31, 2015, in a filing made in connection with its reply in support of its motion for summary judgment (doc. #277: BCA's Resp. to Pl. Statement of Add'l Facts at 1). In that filing, BCA asked that all of the statements set forth in its own SOMF be deemed admitted. BCA also asked that we disregard any material facts set forth in the statement of additional facts that Mr. Albert filed as to Prestige in those instances where Mr. Albert seeks to make use of them in his response to BCA's motion for summary judgment. Alternatively, BCA offered a response to Mr. Albert's statement of additional facts, even though that document is plainly directed towards Prestige, rather than BCA.

This Court is entitled to strictly enforce Local Rule 56.1. *See Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("[b]ecause of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings"); *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) ("[w]e have repeatedly held that the district court is within its discretion to

strictly enforce compliance with its local rules regarding summary-judgment motions"); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005) ("[w]e have ... repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1"). The Seventh Circuit has "consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Parties have a right to expect that local rules will be enforced. *See Renta v. County of Cook*, No. 05 C 2995, 2011 WL 249501, at *1-2 (N.D. Ill., Jan. 26, 2011) (finding that the defendant's "assumption that the court would enforce Local Rule 56.1 was not unreasonable"). In this case, enforcing Local Rule 56.1 against Plaintiff is not an exercise in "gotcha." To the contrary, BCA alerted Mr. Albert more than five months ago of his failure to file a response to BCA's statement of material facts. Yet, Mr. Albert has not undertaken any corrective action. To the extent Mr. Albert did not read BCA's reply and thus remained unaware of his omission, that does not excuse the original error but only compounds it. This Court finds no good cause to delay the resolution of this motion in order to invite Mr. Albert to address a situation that was brought to his attention months ago, and which he has done nothing about. The Court deems admitted Paragraphs 10-53 of BCA's SOMF, and we disregard any statement of additional facts Mr. Albert filed in connection with the Prestige motion and attempts to use in connection with this summary judgment motion.[4]

### III.

We now turn to the facts we deem material to our disposition of this case.

---

[4] Federal Rule of Civil Procedure 56(a) authorizes entry of summary judgment only if the supporting evidence offered by a movant shows "that there is no genuine issue as to any material fact." In light of the absence of any response by Mr. Albert to BCA's statement of material facts, we independently have reviewed the underlying evidentiary materials BCA offers to support its factual statements, and we conclude that these materials support the statement of facts asserted by BCA.

6

Mr. Albert was injured on July 21, 2011, when he was living in Unit 102 of The Brookwood Condominiums, 2650 Brookwood Way in Rolling Meadows, Illinois ("Brookwood" or the "Premises") (TAC, Count II, ¶ 1). Taking place above Mr. Alpert's own unit was a "trash out"[5] of Unit 202, which had gone into foreclosure (*Id.* at ¶ 2). At the time of his injury, Mr. Albert entered the dumpster area in order to place several glass panes into one of the dumpsters (Def. SOMF at ¶ 14). Mr. Albert lifted the lid of a dumpster, at which point a mirror that was placed on top of the closed dumpster fell off and landed on his foot (*Id.* ¶ 15). Mr. Albert did not see the mirror on top of the dumpster before it fell because the mirror was facedown and the back of the mirror (which was facing up) was black—the same color as the dumpster lid (*Id.* ¶¶ 16-17). Mr. Albert did not trip or fall on garbage debris located in the dumpster area at the time of his injury (*Id.* ¶ 18). Mr. Albert does not know who placed the mirror on top of the dumpster, and he does not know when the mirror was placed on top of the dumpster (*Id.* ¶¶ 19-20). Mr. Albert was alone at the time of the injury and is not aware of any witnesses to his injury (*Id.* ¶¶ 21-22).

At the time of his injury, Mr. Albert was married to Barbara Albert (Def. SOMF ¶ 23). Ms. Albert did not see the mirror prior to her husband's injury, does not know who placed the mirror on top of the dumpster, and does not know how long the mirror was on top of the dumpster before it fell on her husband's foot (*Id.* ¶¶ 24-26).

BCA is the governing body for the Premises. BCA hired numerous third parties to assist in the management and upkeep of the Premises, including Waste Management Systems to collect garbage from the dumpster area and haul it off-site three times a week (Mondays, Wednesdays,

---

[5] As used by the parties, the term "trash out" means the act of a property maintenance company removing all non-garbage items and debris from an apartment that has been foreclosed so that it can be prepared for resale.

and Fridays) (Def. SOMF ¶¶ 29-30); Patmar to perform daily janitorial services (*Id.* at ¶ 34); and Prestige to serve as the property manager (*Id.* at ¶ 31).

At the time of Mr. Albert's injury, BCA's president was Bonnie Paul (Def. SOMF ¶ 28). Ms. Paul stated that she did not see the mirror on the dumpster lid, does not know who put the mirror on the dumpster lid, and denies that either she or BCA received notification from residents or other persons regarding a mirror on the dumpster lid (*Id.* at ¶¶ 36-37, 39). Ms. Paul also stated that she had never seen any other mirror placed on a dumpster lid prior to Mr. Albert's injury (*Id.* at ¶ 38).

Megan Klepitsch owns Prestige and was the property manager hired by BCA to manage the Premises (Def. SOMF ¶ 40). Ms. Klepitsch stated that she received no notification regarding a mirror placed on top of the dumpster lid prior to Mr. Albert's injury (*Id.* ¶ 41).

Alfranio Silva is a supervisor for Patmar, and he stated at his deposition that Edward Moscasco was the Patmar janitor assigned to work at the Premises and who was responsible for rotating the dumpster bins on-site on a daily basis (Def. SOMF ¶¶ 42, 44-45). Mr. Moscasco has not been deposed in the case because he cannot be located (*Id.* at ¶ 46). Ms. Silva stated that Patmar had a janitor on-site at the Premises between 8:00 a.m. and 3:00 p.m. each day (*Id.* ¶ 43). Mr. Silva stated that he did not see a mirror on top of the dumpster prior to Mr. Albert's injury, nor does he know who put the mirror there or for how long it sat atop the dumpster (*Id.* ¶¶ 47-49).

Roy Duggins is a contractor hired by A & D to perform the trash out of Unit 202 at the Premises (Def. SOMF ¶ 50). Mr. Duggins stated that he did not see a mirror on a dumpster lid prior to Mr. Albert's injury, nor does he know who put the mirror on top of the dumpster or for how long the mirror rested atop the dumpster (*Id.* ¶¶ 51-53).

8

## IV.

In Count II of Plaintiff's Third Amended Complaint, Mr. Albert alleges that BCA "owed a duty to Plaintiff and others on the premises to use ordinary care in its ownership, control, management and maintenance of the premises including all common areas" (TAC, Count II, ¶ 14). This language suggests, along with the title of Count II of the Third Amended Complaint ("Negligence"), that Mr. Albert's claim against BCA sounds in "general negligence." However, in their summary judgment papers, both BCA and Mr. Albert treat the claim as one of premises liability (*see, e.g.*, Def. Mot. for SJ at 4 (discussing elements of proof needed to establish a claim against a "proprietor"); Pl. Resp. to Def. Mot. for SJ at 2-3 (discussing duties of a property owner and when that duty is breached)). While the parties are entitled to frame the issues in their summary judgment papers as they see fit, we note that the parties jump directly into matters relevant to a breach of duty under premises liability law and skip over the important question of whether BCA even owed Mr. Albert a duty of care, which is an element of the case whether the cause of action is based on ordinary negligence or premises liability. We therefore pause for a moment to explore the question of duty.

### A.

"Whether a duty exists in a particular case is a question of law to be determined by the court." *Ward v. K Mart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990). Within the sweep of premises liability caselaw, Illinois courts have recognized the existence of a duty of care between landowners and persons present on a landowner's property. For example, landlords who lease property to tenants while maintaining control of common areas available to the tenants owe a duty of reasonable care to the tenants to keep those common areas reasonably safe. *Kucharis v. U.S.*, No. 93 C 1096, 1995 WL 151791, at *2 (N.D. Ill., Mar. 31, 1995); *Hiller v. Harsh*, 426

9

N.E.2d 960, 964 (Ill. App. Ct. 1981). A landlord's duty in this regard also extends to persons lawfully present on the premises. *See Kostecki v. Pavlis*, 488 N.E.2d 644, 646 (Ill. App. Ct. 1986). Building owners also have a duty to correct dangerous conditions of which they know or reasonably should know. *Ohio Casualty Group v. Dietrich*, 285 F. Supp. 2d 1128, 1131 (N.D. Ill. 2003) (applying Illinois law). And, business owners owe their invitees a duty to maintain their premises in a reasonably safe condition to avoid injuring them. *Reid v. Kohl's Dept. Store, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008) (applying Illinois law); *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1057-58 (Ill. 2006).[6]

In this case, the parties stand in a somewhat different relationship from that of business owner/invitee or landlord/tenant. BCA, a condominium association, owns and controls the common areas at the Premises, while Mr. Albert was at the time of his injury a non-owner resident living with his then-wife, who was the condominium unit owner. Despite these differences from a more "classic" premises liability case, we find that BCA and Mr. Albert fit well within the parameters of a premises liability claim, and we conclude that BCA, as a property owner, owed Mr. Albert, a resident, a duty of reasonable care to maintain the common areas of the premises in a reasonably safe manner. *See Kucharis*, 1995 WL 151791 at *4 (applying Illinois law to find that landlord owed tenant a duty to keep common areas in a reasonably safe condition); *Simich v. Edgewater Beach Apartment Corp.*, 857 N.E.2d 934 (Ill. App. Ct. 2006) (applying premises liability standards in case concerning a property owner and a shareholder in a

---

[6]Under an Illinois premises liability theory, it is essential that the defendant be in possession and control of the property on which the injury occurred. *See Escobar v. Coca-Cola Enterprises, Inc.*, 390 F. Supp. 2d 692, 695 (N.D. Ill. 2005) (finding that "Coca-Cola owed plaintiff a duty only if it 'possess[ed] and control[led] the . . . property on which the tort occurred'") (citing *Godee v. Ill. Youth Soccer Ass'n*, 764 N.E.2d 591, 594-95 (Ill. App. Ct. 2002)); *see also Strahs v. Tovar's Snowplowing, Inc.*, 812 N.E.2d 441, 447 (Ill. App. Ct. 2004). At no time does BCA contend that it lacked possession and/or control of the common areas located at the Premises.

residential cooperative). This duty includes an obligation to inspect and repair dangerous conditions. *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 123 (7th Cir. 1988).

### B.

We now turn to the question that is the focus of the motion: whether BCA breached its duty to maintain the common areas in a reasonably safe condition. "Breach of this duty occurs when a landlord has actual or constructive knowledge of the existence of the defective condition and does not remedy it." *Kucharis*, 1995 WL 151791 at *4 (citing *Kostecki v. Pavlis*, 488 N.E.2d 644, 646 (Ill. App. Ct. 1986)); *see also Reid*, 545 F.3d at 481. BCA argues that Mr. Albert has offered no evidence from which any reasonable jury could conclude that: (1) BCA had actual knowledge of the alleged condition (the placement of a mirror on the dumpster) that caused Mr. Albert's injury; or (2) BCA had constructive knowledge of a dangerous dumpster area condition that it then failed to remedy. In response, Mr. Albert offers no evidence or argument that BCA had actual knowledge. Rather, Mr. Albert asserts that there is sufficient evidence from which a jury reasonably could "impute constructive notice to [BCA]" because debris was regularly placed on top of the dumpsters and [BCA] failed to remedy the problem (Pl. Resp. to Def. Mot. for SJ at 4).

Under Illinois law, constructive notice of a dangerous condition can be established under two alternative theories: "(1) the dangerous condition existed for a sufficient amount of time so that it would have been discovered by the exercise of ordinary care, or (2) the dangerous condition was part of a pattern of conduct or a recurring incident." *Culli*, 862 F.2d at 123. We address each theory—"sufficient time" and "pattern or practice"—in turn.

**1.**

BCA argues that it cannot be held liable under the "sufficient time" theory of constructive notice because Mr. Albert has produced no evidence indicating that the alleged dangerous condition, a mirror on top of the dumpster lid, existed for so long that BCA ought to have discovered it and taken action (Def. Mot. for SJ at 4-5). Mr. Albert does not oppose BCA's assertion on this point in its response to BCA's motion for summary judgment, and for good reason. Mr. Albert has not come forward with any evidence suggesting a genuine issue of material fact as to who placed the mirror on the dumpster or how long the mirror rested there before Mr. Albert allegedly encountered it. This is fatal to Mr. Albert's ability to proceed on a constructive notice theory based on the length of time the allegedly dangerous condition (the mirror atop the dumpster) existed before his injury. *See Reid*, 545 F.3d at 481-82 (finding that in the absence of evidence demonstrating the length of time the dangerous condition existed, plaintiff cannot establish constructive notice).

**2.**

BCA next argues that Mr. Albert has failed to offer evidence sufficient to create a triable issue of constructive notice based on a theory of a "pattern of conduct or a recurring incident." BCA contends that the law requires that the defendant have constructive notice of the particular dangerous condition that caused the injury—in this case a mirror atop a dumpster—but that there is no evidence of "mirrors on the dumpsters on a daily basis prior to the incident," or even mirrors on dumpsters at any time prior to Mr. Albert's injury (Def. Reply to Mot. for SJ at 4). BCA also argues that the "general garbage" at the dumpster area (that is, everything other than mirrors) cannot be transformed into a dangerous condition of which BCA should have been aware: Mr. Albert was not injured by general garbage at the dumpster area, and thus he may not

12

argue that evidence of complaints by Brookwood residents regarding general garbage at the dumpster area is sufficient for constructive notice in this case (Def. Mot. for SJ at 7; Def. Reply to Mot. for SJ at 3). Mr. Albert counters by arguing that "all that is required to establish constructive notice is a pattern of dangerous conditions which [was] not remedied" (Pl. Resp. to Def. Mot. for SJ at 4).

Both parties discuss at length the case of *Culli v. Marathon Petroleum Co.*, 862 F.2d 119 (7th Cir. 1988), in which a customer sued a gas station for injuries sustained when she slipped and fell on a foreign substance in the pump area of the station. A jury found in favor of the plaintiff, and the defendant appealed. On appeal, the Seventh Circuit considered whether sufficient evidence existed to establish that the plaintiff's injury was caused by "a pattern of conduct or recurring incident which would constitute constructive notice of a dangerous condition." *Id.* at 125-26. In finding that it did, the appeals court stated that the plaintiff did not need to show a pattern or practice of a particular type of spill; rather, the plaintiff needed only to show a pattern of dangerous conditions that were not remedied within a reasonable amount of time. *Id.* at 126. The Seventh Circuit cautioned that while property owners owe invitees "a duty to inspect and repair dangerous conditions on their property or give adequate warnings to prevent injury," they are not insurers of the invitees' safety. *Id.* at 123. But, on the facts of that case, the appeals court held that substantial evidence was presented at trial establishing that spills— whether oil or gas or otherwise—occurred on a daily basis in the pump area, and that the high number of sales made on the day in question (the gas station was also conducting a sale on soda and this brought in additional business on the day of the plaintiff's injury) made it unreasonable for the defendant to have swept and inspected the lot only at night.

The parties also discuss *Olivarius v. Tharaldson Prop. Mgmt., Inc.*, 695 F. Supp. 2d 824 (N.D. Ill. 2010), in which a hotel guest sued an hotel after cutting her foot on a strip of carpet. The plaintiff alleged that the carpet at issue was wet and had been pulled away from the threshold to expose the fastening strip and the concrete floor underneath. *Id.* at 833. The defendant moved for summary judgment, in part on the ground that the plaintiff lacked sufficient evidence to proceed under a theory of constructive notice. The court denied the motion, noting that while "a record devoid of problems similar to the dangerous condition alleged precludes this method of constructive notice," in that case there was evidence that hotel employees knew of frequent flooding and resulting complaints by guests of wet carpeting in their rooms. *Id.* at 834. Accordingly, the court found that a genuine issue of material fact existed as to whether the defendant had failed to properly clean the rooms and check for defective flooring that could result in an injury to a guest. *Id.*

Turning to this case, we conclude that Mr. Albert has failed to demonstrate a genuine issue of material fact as to whether BCA had constructive notice of a pattern of conduct or a recurring incident regarding mirrors being placed on top of the dumpsters. As an initial matter, Mr. Albert's purported statement of additional facts (which we discussed *supra* at 5-6, and which includes testimony from Brookwood residents Eric Janusz, Barbara Albert, and Joseph Garvey, as well as BCA board members Bonnie Paul and Suresh Babu) cannot be used in aid of Mr. Albert's argument that improper garbage disposal, including glass and mirrors, was a common complaint at the Premises and "constituted a regular and recurring dangerous condition which [BCA] should have foreseen and corrected" (Def. Mot. for SJ at 5-6). The properly submitted, material, undisputed facts undermine Mr. Albert's claim of constructive notice. BCA's president, Bonnie Paul, stated that neither she nor BCA received notification from residents or

14

other persons regarding a mirror on the dumpster lid (Def. SOMF ¶¶ 36-37, 39). Ms. Paul also stated that she had never seen any other mirror placed on a dumpster lid prior to Mr. Albert's injury (*Id.* at ¶ 38). The summary judgment record contains no evidence of injuries sustained by residents at the dumpster area due to mirrors, or for specifically documented complaints by other Brookwood residents regarding mirrors on top of the dumpsters.[7] We thus find unsupported by factual evidence Mr. Albert's contention that BCA had constructive notice of a recurrent problem with mirrors being placed on top of the dumpsters. *See Torres v. T.G.I. Friday's,* No. 05 C 45, 2006 WL 3743132 at *4 (N.D. Ill., Dec. 15, 2006) (plaintiff could not establish constructive notice by pattern or practice where the record was devoid of evidence regarding similar injuries caused by problems with lighting in fryer hoods at T.G.I. Friday's).

We turn now to Mr. Albert's final position—that BCA had constructive notice of a recurrent problem of "general garbage" being disposed of in a dangerous fashion in the dumpster area. We find this argument to be without merit. Once again, Mr. Albert has not successfully presented any genuine issues of material fact supporting the theory that the condition of the dumpster area presented a long-standing dangerous situation that BCA should have known about and remedied. *See Olivarius,* 695 F. Supp. 2d at 834 (stating that "a record devoid of problems similar to the dangerous condition alleged" precludes constructive notice based on a pattern or conduct or recurring incident). There is no evidence before the Court indicating recurrence: that is, that residents prior to Mr. Albert had been injured in the dumpster area by garbage deposited

---

[7] For instance, Erik Janusz testified that he observed glass, as well as cabinets, TVs, curtain rods and things of that nature on top of or to the side of the dumpsters some 30-40 times between the summer of 2007 and January of 2009, but that he never contacted BCA to complain about it (Deposition of Erik Janusz at 21-24).

in a dumpster, on top of a dumpster, or in the vicinity of a dumpster, or that other residents had filed or voiced complaints with BCA alerting it to a hazardous garbage situation.[8]

We reach this conclusion while bearing in mind that dumpsters and dumpster areas will naturally contain items that can cause injury, and that Brookwood's dumpster area was a place where residents (at any time of day or night) were allowed to dispose of household garbage and additional unwanted items that, quite possibly, were broken, sharp, heavy, or dirty. Indeed, even Mr. Albert considered the dumpster area to be a proper place to bring unwanted glass given that he was attempting to discard several panes of glass into a dumpster at the time of his injury. *See Robinson v. Suitery, Ltd.*, 526 N.E.2d 566, 568 (Ill. App. Ct. 1988) (in a case brought under ordinary negligence, the court held that "[a]s a matter of common sense, people are presumed to know that dumpsters and other garbage receptacles may contain potentially harmful items with jagged or broken edges inside"). Moreover, not all garbage, even messy garbage, is dangerous. Plaintiff has failed to show how a dangerous condition of which BCA should have been aware can be crafted from the manner in which residents, collectively, dumped their unwanted garbage and other discarded items in the very place designated for their disposal, particularly in the absence of any evidence showing a history of recurring complaints or prior injuries.

---

[8] We note that the record contains the deposition testimony of numerous Brookwood residents concerning debris at the dumpster area. Bonnie Paul testified that she saw "[a]n occasional bag" every five or six months stored on top of a dumpster, but never something large like broken furniture, glass, or mirrors (Dep. of Bonnie Paul at 60-62). Joseph Garvey testified that between May 2011 and Mr. Albert's injury in July 2011, he went to the dumpster area a dozen times and found it unclean and smelly, and that he saw garbage bags stored on top of the dumpsters and discarded items placed to the sides of the dumpsters, but that he never complained to BCA about it (Dep. of Joseph Garvey at 28-33, 61, 65). Barbara Albert testified that she observed "a bit of everything out by those dumpsters" but that she never complained to BCA about it, and any complaints made directly to BCA president Bonnie Paul were about things other than the dumpster area (Dep. of Barbara Albert at 80, 85-87). Suresh Babu, also a BCA member, testified that he saw garbage thrown on top of a dumpster maybe once in the ten times he has gone to the dumpster area (Dep. of Suresh Babu at 132). He stated that he was unaware of any dangerous conditions pertaining to the dumpster area prior to learning about Mr. Albert's lawsuit (*Id.* at 175). Accordingly, even had Mr. Albert properly offered this testimony in response to the motion, it would not create a triable issue as to whether BCA had constructive notice of a dangerous, recurrent condition as to general garbage at the dumpster area.

Nor does Mr. Albert offer evidence showing a pattern of dangerous, messy garbage conditions that were not attended to within a reasonable period of time. *See Culli*, 862 F.2d at 126 ("[w]hat is needed is a pattern of dangerous conditions which were not attended to within a reasonable period of time"). That the dumpster area was routinely filled with garbage and cast-offs is not surprising: it was, after all, a place where people permissibly brought their garbage and unwanted items, and a place that contained upwards of eight individual dumpsters full of garbage awaiting off-site removal by a garbage removal service. To this latter point, we note that the file is replete with evidence indicating that BCA contracted with Waste Management Systems (which was not named as a defendant in this case) to remove all of the garbage from the dumpster area three times a week—on Mondays, Wednesdays, and Fridays. Aside from information regarding the pick-up schedule, the record is devoid of specific information regarding Waste Management, and is silent as to whether the thrice-weekly pick-up arrangement was a problem: for instance whether pick-ups three days a week were insufficient to handle the load of garbage in the dumpster area, or whether pick-ups did not occur as scheduled. Mr. Albert simply offers no evidence suggesting that BCA's response to the accumulation of garbage at the dumpster corral was inadequate. *See Shimkus v. Target Corp.*, No. 10 C 7066, 2012 WL 619500 (N.D. Ill. Feb. 24, 2012) (evidence of over 25 slip and fall incidents at Target store did not establish pattern of dangerous conditions where evidence failed to show that Target's response to such spills was inadequate).

Illinois law does not impose an absolute duty upon property owners to ensure the safety of its residents. *See Nichols v. Lowe's Home Center, Inc.*, 407 F. Supp. 2d 979, 981 (S.D. Ill. 2006) (stating the "[t]he defendant is not required to . . . make his premises injury-proof"). Rather, the law imposes a duty of reasonable care upon property owners to remedy dangerous

situations of which they knew or should have known. The situation in this case is quite different from *Culli,* where the facts supported the existence of a known, recurring type of hazard—the spilling of oil and gas—on the ground around the pump area where patrons were getting in and out of their cars, and where the defendant only cleaned the pump area once at night despite this knowledge. It is also different from *Olivarius,* where the evidence indicated that the hotel had experienced flooding, that patrons had specifically complained about wet carpets, and where the evidence indicated that the hotel had ripped up wet carpet and then failed to reattach it properly. Therefore, even while mindful that Mr. Albert suffered an unfortunate injury, on this summary judgment record, we cannot conclude that a jury reasonably could find that BCA had constructive knowledge of a dangerous condition created by the manner in which Brookwood residents disposed of their garbage and debris at the dumpster area.

## CONCLUSION

For the foregoing reasons, we grant defendant BCA's motion for summary judgment (doc. # 238).

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED: February 9, 2016**