IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNETH ALBERT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 12 C 9785 |
| vs. | ) |
| | ) Magistrate Judge Schenkier |
| BANK OF AMERICA, N.A., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER[1]

This case arises out of an incident in which Plaintiff Kenneth Albert ("Plaintiff" or "Mr. Albert") was injured when a mirror lying on top of a dumpster at his condominium complex fell on his foot as he attempted to dispose of some discarded glass shelves. Mr. Albert originally filed a five count complaint in state court alleging negligence against Bank of America, NA ("Bank of America"), RE/MAX City View ("RE/MAX"), Prestige Management Solutions, LLC ("Prestige"), The Brookwood Condominium Association ("BCA"), and The Federal Home Loan Mortgage Corporation ("Freddie Mac") (doc. # 1: Notice of Removal, Ex. 1). On December 7, 2012, Freddie Mac removed the complaint to federal court (*Id.*). Mr. Albert subsequently amended the complaint to add defendants A&D Property and Services, Inc. ("A&D") and its owner, Ananias Granger ("Granger"), and Patmar Janitorial Service, Inc. ("Patmar") (doc. # 26: Second Am. Compl.). Pursuant to various motions and settlement agreements, Bank of America,

---

[1] On April 4, 2013, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 17).

RE/MAX, Granger, and Freddie Mac are no longer defendants;[2] BCA, Prestige, A&D and Patmar remain in the case (doc. # 203: Third Amended Complaint ("TAC")).

Before the Court is A&D's motion for summary judgment as to Count VI of the Third Amended Complaint (doc. ## 236, 239: Def's Mot. for SJ), which is the only one directed toward A&D.[3] Mr. Albert has filed a response to the motion (doc. # 256: Pl. Resp. to Mot. for SJ), and A&D has filed a reply (doc. # 274: Def. Reply to Mot. for SJ). A&D is a property services company hired by former defendant Freddie Mac to perform a "trash out"[4] of foreclosed condominium unit 202 at the Brookwood Condominiums ("Brookwood" or the "Premises") in the summer of 2011 (doc. # 207: A&D's Answer to TAC, Count VI, ¶ 3). Mr. Albert alleges that A&D's subcontractor, R.A.C. Construction ("R.A.C."), was negligent because it failed to properly haul away construction debris and other garbage from the trash out, and instead put the mirror that cut Mr. Albert's foot on top of a Brookwood dumpster (Pl. Resp. to Mot. for SJ at 1). Mr. Albert contends that A&D is liable for R.A.C.'s negligence because R.A.C. was an employee of A&D (TAC, Count VI, ¶¶ 7, 8).

In its motion, A&D argues that the undisputed facts show that, under governing law, there is no triable issue as to whether R.A.C. breached any duty of care to Mr. Albert, or as to whether A&D could be held responsible, even had R.A.C. breached a duty. For the following reasons, the Court grants A&D's motion for summary judgment.

I.

---

[2]Bank of America was dismissed on December 3, 2013 (doc. # 60); plaintiff dismissed Ananias Granger on July 9, 2014 (doc. # 169); Freddie Mac was dismissed from the case on September 14, 2014 (doc. # 175); and RE/MAX was dismissed on July 15, 2015 (doc. # 249).

[3]The counts directed at the other remaining defendant – Prestige (Count I), BCA (Count II) and Patmar (Count III) - are the subject of separate summary judgment motions by each of those defendants, which we decide today in separate rulings.

[4]As used by the parties, "trash out" means the act of a property maintenance company removing all non-garbage and debris from an apartment that has been foreclosed so that it can be prepared for resale.

2

The legal standards governing motions for summary judgment are well-established. Summary judgment is appropriate where the moving party establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the movant shows that there is an absence of evidence to support the nonmoving party's case, the nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013) (internal citations and quotations omitted).

In deciding a motion for summary judgment, we "construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen'l Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013). We do not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Stokes v. Board of Educ. of the City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). That said, we are mindful that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## II.

In support of its motion, A&D has submitted a Local Rule 56.1 statement of material undisputed facts (doc. # 237: SOMF). Plaintiff has responded to the SOMF (doc. # 257: Pl. Resp. to SOMF), and has filed its own statement of additional undisputed facts (*Id.*: Pl. SOAF), to

3

which A&D has responded (doc. # 275: Def. Resp. to SOAF). "In determining what is disputed, we focus not only on whether the parties profess to dispute a fact, but also on the evidence the parties offer to support their statements." *Barkl v. Kaysun Corp.*, No. 10 C 2469, 2011 WL 4928996, at *1 n.2 (N.D. Ill. Oct. 13, 2011) (citing *Zitzka v. Vill. of Westmont*, 743 F. Supp. 2d 887, 899 n.2 (N.D. Ill. 2010)). "We review only those facts whose substance would be admissible at trial under a form permitted by the Federal Rules of Evidence, although the form produced at summary judgment need not be admissible." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010). The following facts are undisputed unless otherwise noted by the Court.

At the time of the accident, Mr. Albert lived in Unit 102 of the Brookwood Condominiums in Rolling Meadows, Illinois (Pl. Resp. to SOMF ¶ 4). On July 21, 2011, at approximately 8:00 p.m., Mr. Albert carried a shelf he found sitting in the lobby out to the dumpster corral (*Id.*).[5] He put the shelf on the ground before lifting the lid of one of the dumpsters to open it. When Mr. Albert lifted the lid, a mirror that was lying on top of the dumpster slid off onto Mr. Albert's foot, cutting it (*Id.*).

How the mirror made its way to the top of the dumpster forms the crux of Mr. Albert's allegation that A&D is liable for negligence. Mr. Albert did not witness anyone putting the mirror on top of the dumpster (*Id.* at ¶ 6). The undisputed evidence about the mirror that cut his foot is scant; the summary judgment record contains no pictures of it, we don't have a description of its size, and we do not know what happened to the mirror after it fell off the dumpster and cut Mr. Albert's foot. But, Mr. Albert insists that either R.A.C. put the mirror on

---

[5]According to Mr. Albert's testimony elsewhere in his deposition, the "shelf" was actually three glass shelves he found in the lobby of his building (Deposition of Kenneth Albert at 65).

4

the dumpster, or at the least, there is a disputed question of fact about R.A.C.'s involvement with the mirror.

The undisputed evidence also shows that on July 21, 2011, R.A.C., a subcontractor hired by A&D, was performing the trash out of foreclosed Unit 202 (Pl. Resp. to SOMF ¶ 18).[6] The trash out was performed by Roy Duggins, owner of R.A.C., and took approximately one hour to complete (Pl. Resp. to SOMF ¶¶ 20, 31). No one from A&D was present at Brookwood during the trash out of Unit 202 (*Id.* ¶ 33). Mr. Duggins testified that R.A.C. was paid for trash out work based on the number of cubic yards of material it removed from a site (Pl. Resp. to SOMF, Ex. C at 60). After completing a job, Mr. Duggins sent a picture to A&D of the items he removed (Pl. Resp. to SOMF ¶ 30).[7]

Mr. Duggins testified that it was his regular custom and practice to haul away all debris from a trash out project (Pl. Resp. to SOMF, Ex. C at 108). Mr. Duggins testified that on limited occasions, he would obtain specific permission from a condominium association to use its dumpsters to dispose of trash (Deposition of Roy Duggins at 61). Mr. Duggins did not ask BCA for permission to use the dumpster, and had no memory of BCA offering him use of the dumpsters to dispose of material from the trash out (Pl. Resp. to SOMF ¶ 42, and Deposition of Roy Duggins at 61-63). Mr. Duggins also testified that he has no memory of ever putting a mirror into a dumpster after a trash out (*Id.* at 114). He understood that A&D's policy was that he was not allowed to use onsite dumpsters to dispose of debris from a project, but instead was

---

[6] Plaintiff purports to dispute this fact on the ground that it is not supported by the page of Mr. Granger's deposition A&D cites (page 22). However, this factual assertion is supported by testimony at page 21 of Mr. Granger's deposition.

[7] Plaintiff disputes the assertion that the photos Mr. Duggins sent to A&D of the Brookwood trash out completely and accurately represented all of the debris he removed from Unit 202, but has no evidence for his disagreement other than Mr. Duggins' testimony that he does not remember the particular details of the trash out.

5

required to haul away all debris using his own truck and dispose of it elsewhere (Pl. Resp. to SOMF ¶ 39).

During his August 28, 2014 deposition, Mr. Duggins testified that he had no specific memory of performing the trash out of Unit 202 at Brookwood more than three years earlier, on July 21, 2011 (Pl. Resp. to SOMF ¶ 35). At his deposition, Mr. Duggins reviewed photos of Unit 202 taken both before and after the trash out, including photos of the material he removed from the apartment (*Id.* at ¶¶ 37, 38; Deposition of Roy Duggins at 51-52, 55-60). The photographs show that Mr. Duggins removed an armoire, among other items, from Unit 202 (Pl. Resp. to SOMF ¶ 34). Prior to being removed from the apartment, the armoire contained several pieces of glass – three pieces on the doors and a glass shelf (Deposition of Roy Duggins at 58, 63-64). The armoire also contained an attached mirror (*Id.* at 110-111).

Based on his review of the photos, Mr. Duggins testified that prior to removing the armoire from Unit 202, he removed minor hardware and glass from the doors and shelves (Deposition of Roy Duggins at 99-100). The photos also show that the mirror was still attached to the armoire when Mr. Duggins photographed the armoire next to his truck after removing it from the apartment (Pl. Resp. to SOMF ¶ 40). Mr. Duggins testified that if the mirror was detachable, he would have removed it, but he does not have any specific memory of doing so (Deposition of Roy Duggins at 111). Nor are there any photographs of the armoire without the mirror, as there are photos of the armoire without the glass from the door and the shelves (Def. Resp. to SOAF ¶ 28).

Mr. Duggins testified that, based on the photographs, it was "clear to [him] to a certainty" that he did not remove the mirror from armoire (Deposition of Roy Duggins at 121). He drew that conclusion from the fact that the photographs showed the armoire with the mirror still in

6

place after he removed it from Unit 202 and that if he had removed the mirror, he would have done so before moving the armoire from the apartment. Specifically, Mr. Duggins testified that "it wouldn't make any sense" to have taken the mirror off the armoire only after he had hauled it from Unit 202 down to his truck (*Id.*). Mr. Duggins also testified that, while he has no memory of performing the trash out of Brookwood Unit 202, based on his regular practice, he assumes he put the armoire with the mirror into the back of his truck and hauled it away to be donated or dumped (*Id.* at 121-126).

Mr. Albert testified to his contrary belief that the mirror that cut his foot "had to come from Unit 202" and was put on top of the dumpster by one of the "construction guys" working in that unit on the day of his accident (Pl. Resp. to SOMF ¶¶ 5, 6, 7). As we have stated above, Mr. Albert did not see who placed on the dumpster the mirror he said caused his injury. Instead, Mr. Albert testified that he had observed construction going on in Unit 202 for a couple of weeks before his accident and he had seen "construction guys" dump debris like the mirror in the dumpsters (Pl. Resp. to SOMF ¶ 5). Mr. Albert had seen "construction guys" dump debris into the dumpsters on at least two occasions prior to his accident; he did not know for whom these individuals worked (Pl. Resp. to SOMF ¶¶ 8, 9). Construction debris accumulated on the dumpsters whenever there was work done on an apartment unit, including prior to the work performed on Unit 202 on July 21, 2011 (Pl. Resp. to SOMF ¶¶ 10, 11, 12).

### III.

In an action for negligence, a plaintiff must show the existence of a duty on the part of the defendant, a breach of that duty, and an injury proximately caused by the breach. *Vesey v. Chicago Housing Authority*, 583 N.E.2d 538, 541 (1991), *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053-54 (2006). Plaintiff makes two arguments opposing summary judgment: (a)

that there is a dispute of material fact about whether R.A.C. was negligent in the way that it disposed of the mirror so that it ended up on top of the dumpster, eventually falling on Mr. Albert's foot; and (b) that there is a dispute of material fact about whether R.A.C. is an employee of A&D (making A&D liable for R.A.C.'s actions) or an independent contractor (which requires a more rigorous analysis about whether liability attaches to A&D). *See, Wilkerson v. Paul H. Schwendener, Inc.,* 884 N.E.2d 208, 210 (Ill. App. Ct. 2008).

With respect to the independent contractor issue, we note that, as a separate business entity, R.A.C. cannot be an "employee" of A&D. Instead, the proper inquiry to determine whether A&D may be held liable for the negligent acts of R.A.C. is whether A&D has sufficiently "retained control" over R.A.C.'s work as that term is defined under Illinois law. *See,* Restatement (Second) of Torts § 414 (1965); *Lee v. Six Flags Theme Parks, Inc.,* 10 N.E.3d 444, 459-460 (Ill. App. Ct. 2014). That said, we have no need to reach this issue, because, as we explain below, we conclude that plaintiff has failed to present a triable issue as to whether R.A.C. was negligent. And, absent the possibility that a jury could reasonably find that R.A.C. was negligent, no liability can attach to defendant A&D.

### A.

Mr. Albert's allegation of negligence by R.A.C., fails because the evidence in the summary judgment record would not allow a jury to reasonably find that R.A.C. proximately caused Mr. Albert's injury. Proximate cause is an "essential element" of a negligence claim. *Bermudez v. Martinez Trucking,* 796 N.E.2d 1074, 1078 (Ill. App. Ct. 2003). To establish proximate cause, a plaintiff bears the burden of "'affirmatively and positively show[ing]' that the defendant's alleged negligence caused the injury." *Rahic v. Satellite Air-Land Motor Service, Inc.,* 24 N.E.3d 315, 322 (Ill. App. Ct. 2014) *quoting Bermudez,* 796 N.E.2d at 1078. Liability

8

for negligence cannot be based on mere speculation, guess or conjecture, but can only be established "when there is a reasonable certainty that the defendant's acts caused the injury." *Bermudez*, 796 N.E.2d at 1079 *(quoting Salinas v. Werton*, 515 N.E.2d 142, 144 (1987)).

"While proximate cause is generally a question of fact, it becomes a question of law when the facts alleged indicate that a party would never be entitled to recovery." *Malacina v. Meijer Stores, Limited Partnership*, No. 12 C 6077, 2014 WL 1202527 (N.D. Ill. March 18, 2014) *(Schenkier, J)* (citing *Strutz v. Vicere*, 906 N.E.2d 1261, 1264 (Ill. App. Ct. 2009)). Causation may be established by either direct or circumstantial evidence, but in cases relying on circumstantial evidence, the inferences that arise therefrom must be reasonably drawn. *Malacina*, 2014 WL 1202527 at *4. "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the possibilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Hudson v. Twenty–Three East Adams Street Corp.*, 787 F.Supp. 141, 143 (N.D.Ill. 1992) (quoting *Collins v. Am. Optometric Ass'n*, 693 F.2d 636, 640 (7th Cir. 1982)).

Mr. Albert seeks to hold A&D liable for the alleged negligent act of its subcontractor, namely that R.A.C. disposed of a mirror from the trash out by putting it on top of a Brookwood dumpster instead of hauling it away. He argues that Mr. Duggins' inability to remember any details of the trash out, coupled with Mr. Albert's own certainty that the mirror "had to come from 202" (Pl. Resp. to SOMF ¶ 6), would allow a jury reasonably to find that R.A.C. placed the mirror on top of the dumpster. We disagree.

Plaintiff has failed to offer a basis other than speculation for a jury to find that Mr. Duggins placed the mirror on top of the dumpster. The fact that – three years later – Mr. Duggins did not have a specific memory of the details of the trash out is not a basis to conclude that he

did the very thing he does not recall doing. To hold otherwise would constitute the kind of conjecture that Illinois law forbids. *See, Burmudez*, 796 N.E.2d at 1079 (inference that student truck driver lost control of truck because instructor was napping was purely speculative absent any evidence about why or how driver lost control); *Robinson v. BT II, Inc.* No. 1-14-3658, 2015 IL App (1st) 143658-U (Ill. App. Ct., Nov. 12, 2015) (inference that loose playground mat caused child's fall not reasonable where no one saw the fall and child himself did not remember where he was or what he was playing on at the time of his injury).

The speculative nature of plaintiff's argument is evident in light of certain facts that are undisputed. On July 21, 2011, Mr. Duggins removed an armoire containing an attached mirror from Unit 202 during a trash out that lasted about an hour. There is no evidence of any other mirror being removed from Unit 202. There is also no evidence that Mr. Duggins ever detached the mirror from the armoire. To the contrary, the photographs shown to Mr. Duggins during his deposition establish that the mirror was still attached to the armoire after Mr. Duggins had brought it down from Unit 202 and was about to load it onto his truck. He explained that it would have made no sense for him to remove the mirror *after* he had moved the armoire out of the unit, and that it would have made no sense to dispose of the mirror when he likely would have sold or donated the armoire (Deposition of Roy Duggins at 121-122).

Plaintiff has offered no evidence to contradict this testimony. Nor has plaintiff offered evidence that the trash out for Unit 202 was the only possible source for a discarded mirror. Indeed, the plaintiff himself testified that the dumpster area was regularly filled with garbage and debris even when no construction was occurring at Brookwood. Indeed, at the time of his injury, Mr. Albert himself was disposing of glass shelving at the dumpster.

10

Mr. Albert attempts to bolster his contention that Mr. Duggins must have removed the mirror from the armoire (and then left it at the job site) by presenting evidence about several pieces of glass that Mr. Duggins did remove from the armoire prior to taking it outside (Deposition of Roy Duggins at 58-60). However, that evidence cuts against the inference plaintiff seeks to draw. As Mr. Duggins testified without contradiction, it would make no sense to bring the armoire out of the unit with the mirror attached (and risk breaking it during the move) only to remove the mirror after the work of moving the armoire had already been finished. The fact that Mr. Duggins removed the glass shelves before taking the armoire out of Unit 202 undermines, rather than supports, an inference that he detached the mirror only after moving the armoire.[8]

Without any evidence reasonably linking Mr. Albert's injury to R.A.C.'s performance of the trash out, we find as a matter of law that a jury could not reasonably find that R.A.C. (and thus, A&D) is liable in negligence for Mr. Albert's injury. Therefore, we grant summary judgment to A&D on count VI of the Third Amended Complaint.

---

[8] We also note that Mr. Albert described two "construction guys" with Eastern European accents as the individuals who had been doing construction work in Unit 202 in the weeks leading up to his accident (Pl. Resp. to SOMF, Ex. E at 43-44). Mr. Duggins, who grew up in DuPage County in Illinois, testified without contradiction that he performed the trash out work entirely on his own for about one hour on July 21, 2011(Pl. Resp. to SOMF, Ex. C at 8, 55, 91).

## CONCLUSION

For the foregoing reasons, we grant defendant A&D's motion for summary judgment (doc. ## 236, 239).

**ENTER:**

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED:** February 9, 2016